UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALFREDO HUNG,

Plaintiff,

-v-

CRISTINA HUNG,

Defendant.

and

ELISA HUNG, and MARILYN HUNG,

Nominal Defendants.

---

25-CV-02427 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Alfredo Hung ("Plaintiff" or "Alfredo") brings this suit against his sister Cristina Hung ("Defendant" or "Cristina") for alleged breaches of fiduciary duty as executor of their late father's will and for an equitable accounting of Alfredo's inherited entitlements. ECF No. 30 ("Amended Complaint" or "FAC"), ¶¶ 32-41. Cristina moves to dismiss Alfredo's claims under Rule 12(b)(1), on the basis that they are barred by the probate exception to federal jurisdiction, and under Rule 12(b)(6), on the basis that they are contradicted by documentary evidence and fail to state a claim upon which relief can be granted. ECF No. 34 ("Mem.") at 1-4, 8-14. For the following reasons, the Motion is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

### A. Factual Background

The following facts, drawn from the Amended Complaint unless otherwise indicated, are accepted as true and construed in the light most favorable to the Plaintiff for the purposes of this motion. *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

Alfredo is one of four children—along with Cristina and Nominal Defendants Elisa Hung and Marilyn Hung (collectively, "Defendants" or "sisters")—of the late Mrs. Wai Lamde Hung ("Wai") and Mr. Quock Hung Leung ("Quock"). FAC, ¶ 1. Wai died on October 24, 2019, and Quock died on November 5, 2022. *Id.*, ¶¶ 2-3. Cristina assisted Quock with his banking transactions from the late 1990s until his death. *Id.*, ¶¶ 9, 11. In March 2020, Quock developed Parkinson's disease, and Cristina arranged for him to move into her home in Connecticut. *Id.*, ¶ 10. Quock's cash assets that year were worth approximately $3.1 million. *Id.*, ¶ 12. He appointed Cristina to be executor of his Last Will and Testament ("the Will"), and after his death, the Connecticut Northern Fairfield County Probate Court appointed her to be executor of his estate on December 28, 2022. *Id.*, ¶¶ 14-15, 19; *see also* ECF No. 35 ("Simon Decl."), Ex. 5 ("Will"). The Connecticut probate proceeding remains open and ongoing. Simon Decl., ¶ 3. Quock also named Cristina the trustee of a revocable trust in his name. *Id.*, Ex. 4 ("Trust").

The Will bequeathed to Alfredo real property at 134-136 and 134-48 Maple Avenue in Queens, New York ("the Queens Property"), which is worth $600,000 or

more. FAC, ¶ 16; Will, ¶ 4. Quock's Will further directed that his "residuary estate consisting of the rest of [his] property and any other property received by [his] Executor as a result of my death . . . be held and disposed of by the Trustee [Cristina] in accordance with the terms of Article FOURTH of [the Trust agreement]." Will, ¶ 5. Article FOURTH of Quock's Trust provides that "[t]he balance of the Trust Estate remaining after the payments provided for under paragraphs B and C of Article THIRD"—which account for various expenses and otherwise grant estate assets to Cristina and/or the sisters, respectively—"shall be paid to my children Elisa Hung, Cristina Hung-Kropas aka Cristina Hung and Marilyn Hung, in equal shares per stirpes." Trust, ¶ 4. In sum, Quock left his residuary estate to the sisters. The paragraph further explains, "I believe that I have otherwise treated my son, Alfredo Hung, fairly and not because of any lack of affection by conveying my interest in certain New York real property to him prior to my death or under the terms of my Last Will and Testament." *Id.* The Will then reiterates that the residuary of Quock's estate shall be paid to Defendants—and not Alfredo—in equal shares per stirpes. Will, ¶ 5. It further directs that if "such disposition of [Quock's] residuary estate is ineffective for any reason, then [he] give[s] his residuary estate to [the sisters], in equal shares per stirpes." *Id.* Other than to identify him as Quock's son, Alfredo is not mentioned in the Will or Trust beyond these provisions regarding the Queens Property. *See generally* Will. The Will also specifies that "[p]eriodic judicial accounting shall not be required to be filed in any jurisdiction." Will, ¶ 8.

After Quock's death, Cristina filed a petition for probate of Quock's Will in the Northern Fairfield County Probate Court ("the Connecticut Probate Court"). Simon Decl., Ex. 6 ("Probate Proceeding"). Judge Kathleen N. Maxham signed the *Decree granting Administration or Probate of Will for the Estate of Quock Get Hung Leung* on December 28, 2022. *Id.*

Cristina also filed an initial inventory of Quock's estate with the Connecticut Probate Court on October 20, 2023. FAC, ¶¶ 19-20. That inventory included several of Quock's accounts held at Citibank with beneficiary designations. *Id.*, ¶ 21. Although Cristina certified on that inventory that she sent such inventory to all beneficiaries, Alfredo did not receive a copy. ECF No. 48 ("Hung Decl."), ¶ 9. On February 1, 2024, the inventory showed a cash balance of $755,089.99. FAC, ¶ 25. In an email, Cristina told Alfredo that Quock died with "a fraction of what he had in recent years" because his money was tied up in real estate in Venezuela. *Id.*

Alfredo was a named beneficiary or joint beneficiary of certain of Quock's bank accounts at Citibank and/or other brokerage accounts of his. *Id.*, ¶ 17. In particular, Alfredo identifies three accounts of Quock's to which he was a beneficiary, ending in -295, -234, and -7673, respectively. Hung Decl., ¶¶ 9, 11. Alfredo told his sisters that he had started processing their inheritance claims with Citibank on January 19, 2023. *Id.*, ¶ 10. On February 17, 2023, Citibank requested Internal Revenue Service ("IRS") form 5173 to process Alfredo's applications to access assets from the accounts ending in -295 and -234, but that form can only be filed by a trustee or through an override from the probate court. *Id.*

On December 27, 2023, Citibank issued a letter stating the form had not been filed. *Id.* On February 1, 2024, Cristina stated that there was no money to distribute. *Id.* After Alfredo hired an attorney, however, Citibank released his share of the two accounts, $106,082, in June 2024, with no IRS form required. *Id.*; FAC, ¶ 26.

Citibank also notified Alfredo that he was a beneficiary to Quock's account ending in -7673, although the bank had originally stated that only the three sisters were beneficiaries. Hung Decl., ¶ 11, Exs. 4-5. Alfredo was told in August 2024 that this bank account had a balance of $220,280.11, to which he was a beneficiary of $78,000. *Id.*, ¶ 11; FAC, ¶ 27. Alfredo has requested remittance of these funds from Citibank, but Cristina has not authorized them for release. FAC, ¶ 27. Cristina alleges that Alfredo withdrew roughly $55,000 from this account, but Alfredo says only Cristina could have done this. Mem. at 2; Hung Decl., ¶¶ 12-15.

Alfredo contends that Cristina altered beneficiary designations on the -7673 account after Quock's death to exclude Alfredo from his entitlements to assets in that account under an originally designated plan, FAC, ¶ 30(b); that she failed to timely file estate tax returns and/or pay applicable related taxes for the tax year ending December 31, 2022, resulting in tax liens and/or penalties imposed upon the estate, *id.*, ¶ 30(c); that she failed to secure ancillary letters of administration and/or commence appropriate and/or ancillary proceedings in the Surrogate's Court, State of New York, County of Queens, in order to properly and timely transfer title of the Queens Property to Alfredo, *id.*, ¶ 30(d); that she has failed to maintain

and/or account for accurate and complete records of Quock's assets, *id.*, ¶ 31; and that she has commingled her personal funds with estate-related assets, including rental income from property in Venezuela, *id.*

On September 26, 2025, Cristina filed an ancillary probate proceeding in Queens County Surrogate's Court to administer the new ownership proportions for the Queens Property. ECF No. 51 ("Suppl. Simon Decl."), ¶ 8 (stating that Cristina did this because Alfredo refused to sign the deed to the Queens Property); *id.*, Ex. 4 ("Ancillary Probate Proceeding").

**B. Procedural History**

Alfredo initiated this lawsuit on March 25, 2025. ECF No. 1. On June 19, 2025, his sisters moved to dismiss his original complaint. ECF Nos. 19-21. Alfredo filed the Amended Complaint on July 7, 2025, claiming that Cristina has breached her fiduciary duty to Alfredo in her capacity as executor of the Will and of Quock's estate and demanding an accounting of Quock's assets. *See* FAC, ¶¶ 32-41. He seeks, *inter alia*, $78,000 in damages and the appointment of a disinterested person to take the account of assets in Quock's current and former accounts, find the balance due to Alfredo, and report such findings to the Court. *Id.*, ¶ 41(i)-(v). On July 28, 2025, the sisters moved to dismiss the Amended Complaint, arguing that its claims are barred by the probate exception to federal jurisdiction, are otherwise contradicted by documentary evidence, and fail to state a claim upon which relief can be granted. *See generally* Mem.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

A court must dismiss a claim for lack of subject matter jurisdiction under 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (cleaned up). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up), *aff'd*, 561 U.S. 247 (2010).

A motion pursuant to Rule 12(b)(1) "challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. Healthport Techs., LLC,* 822 F.3d 47, 56 (2d Cir. 2016). "When the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)(citation omitted). "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Id.* at 57. In such a case, "the plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," or they may "come forward with evidence of

their own to controvert that presented by the defendant." *Id.* "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

**B. Rule 12(b)(6)**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Jurisdiction is a "threshold" matter that must be decided before proceeding to the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 98 (1998). Accordingly, the Court first addresses Defendants' assertion that Plaintiff's claims are barred by the probate exception to federal jurisdiction.

### A. The Probate Exception to Federal Jurisdiction

"The probate exception is a judicially created doctrine that proscribes federal courts from hearing 'probate matters,' even if subject-matter jurisdiction would otherwise lie." *Woitovich v. Schoenfeld*, No. 22-CV-1742 (JMF), 2022 WL 17979571, at *2 (S.D.N.Y. Dec. 28, 2022) (citing *Marshall v. Marshall*, 547 U.S. 293, 299 (2006)). As the Supreme Court articulated in *Marshall v. Marshall*, it (1) "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate" and (2) "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court," but it "does not bar federal courts from adjudicating matters outside those confines." 547 U.S. at 311-12. Accordingly, after *Marshall*, the probate exception could no longer "be used to dismiss widely recognized torts such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 108 (2d Cir. 2007) (cleaned up). Likewise, a federal court may properly "adjudicate rights in property in the custody of a state court where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Id.* (cleaned up). The probate exception also does not divest the Court of jurisdiction to hear an action that "seeks damages from Defendant[] personally rather than assets or distributions from [the] estate," *id.* at 107-08, as Alfredo ostensibly does here. FAC,

¶¶ 27, 41(i) (seeking, in damages from Cristina, $78,000—the amount to which he believes he is entitled from a Citibank account of Quock's).

In *Lefkowitz v. Bank of New York*, the Second Circuit held the probate exception to apply only where a plaintiff seeks either to "(1) administer an estate, probate a will, or do any other *purely* probate matter," or "(2) to reach a res in the custody of a state court." *Lefkowitz*, 528 F.3d at 106 (cleaned up). "[S]ince few practitioners would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge, the first prong of the probate exception is rarely, if ever, violated." *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002), *abrogated on other grounds by Lefkowitz*, 528 F.3d at 106. Accordingly, "the dispositive question is whether [Plaintiff's] claims ask this Court to exercise control over a *res* in the custody or control of a state court." *Bollenbach v. Haynes*, No. 18CV997, 2019 WL 1099704, at *3 (S.D.N.Y. Mar. 8, 2019).

To answer this question, "the court 'must examine the substance of the relief that [the plaintiff] [is] seeking, and not the labels [the plaintiff] ha[s] used.'" *Sechler-Hoar v. Tr. U/W of Gladys G. Hoart*, No. 17-CV-01968 (KAD), 2020 WL 292314, at *4 (D. Conn. Jan. 21, 2020) (quoting *Mercer v. Bank of N.Y. Mellon, N.A.*, 609 Fed. Appx. 677, 679 (2d Cir. 2015) (summary order)).

**1. Breach of Fiduciary Duty**

Although the Second Circuit has recognized that the probate exception should not exclude widely recognized torts or other claims from federal jurisdiction merely because they are intertwined with probate proceedings, *Lefkowitz*, 528 F.3d

at 108, it has also recognized that claims such as conversion and unjust enrichment are not immune from the probate exception merely because they are styled as tort claims, *id.* at 107. Accordingly, although Plaintiff's breach of fiduciary duty claim is not inherently within the probate exception's remit, *see Lefkowitz*, 528 F.3d at 108, that claim may still "mask . . . complaints about the maladministration of h[is] parent's estates" as the sisters contend. *Id.* at 107.

Alfredo avers that Cristina breached her fiduciary duty because she acted "negligently and/or wrongfully" in her capacity as executor of the Will through "waste" to the estate, "delayed distribution of non[-]probate assets to which Alfredo was and/or is entitled," and failure to "institute appropriate proceedings in the proper forum in order to properly probate the Queens [P]roperty." FAC, ¶¶ 33-35. The Court assesses each in turn.

**a. Negligence**

Alfredo claims that "Cristina has acted negligently with respect to her position as the executor of Quock's estate, which has resulted in the delay of Alfredo's receiving those portions of Quock's estate to which he is entitled." *Id.*, ¶ 31(a)(iii). By asking for expedited access to Quock's estate, this aspect of Alfredo's breach of fiduciary duty claim seeks, "in essence, disgorgement of funds that remain under the control of the Probate Court." *Lefkowitz*, 528 F.3d at 107-108. The Court's involvement would thus impermissibly interfere with "res in the custody of a state court," *Lefkowitz*, 528 F.3d at 106, such that the probate exception applies.

**b. Waste to the estate**

Alfredo alleges that Cristina has caused waste to Quock's estate by "[f]ailing to timely file Estate tax returns and/or pay applicable related taxes for the tax year ending December 31, 2022 resulting in tax liens and/or penalties imposed upon the Estate thereby potentially interfering with the Estate beneficiaries' receipt of funds and/or property to which they were entitled"; "fail[ing] to maintain accurate and complete records for the assets of Quock and/or fail[ing] to account for same"; "comming l[ing] estate-related assets with her own personal funds[,] includ[ing], upon information and belief, rental income from a property located in Venezuela that was owned by the decedent or his estate[, which] Plaintiff believes Cristina has not applied . . . to estate expenses, taxes, or beneficiary distributions"; and "act[ing] wrongly with respect to the filing of reports with the Internal Revenue Service, which resulted in penalties being assessed against the estate to the detriment of Alfredo's rights as beneficiary of that estate." FAC, ¶¶ 30(c), 31, 31(iv). "Such . . . claim[s] do[] not ask the court . . . to administer the estate, but rather to impose tort liability on [its] guardian[] for breach of fiduciary duty." *Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006). Accordingly, such contentions do not fall within the probate exception.

**c. Delayed distribution of non-probate assets**

This aspect of Alfredo's breach of fiduciary duty claim appears most tied to his requested form of relief: namely, damages in the amount of $78,000—the same amount to which he believes he is entitled from a Citibank account of Quock's

ending in -7673. FAC, ¶¶ 27, 41; Hung Decl., Exs. 4-5. If the contested assets in the Citibank account were under the control of the probate court, this requested relief would be equivalent to "disgorgement of funds that remain under the control of the Probate Court." *Lefkowitz*, 528 F.3d at 107; *see also Fisch v. Fisch*, 2014 WL 5088110, at *3 (S.D.N.Y. Sept. 23, 2014) ("while styled as a claim seeking actual damages from Defendant," plaintiff's claim—which "essentially seek[s] a declaration . . . that a portion of the estate (or its equivalent amount of money) should go to him instead of to Defendant"—is "really against the estate itself."); *Bollenbach v. Haynes*, No. 18-CV-00997, 2019 WL 1099704, at *5 (S.D.N.Y. Mar. 8, 2019) (where "[Plaintiff's] claims for damages in the amount of her purported share of specific assets within the Surrogate's Court's purview are at their core predicated on [decedent's] designation of [Defendant] as beneficiary and [Defendant's] receipt of those assets after [decedent's] death.").

Cristina acknowledges, however, that Quock's Citibank accounts with beneficiary designations pass *outside* of probate, and the Court sees nothing in the record to indicate that those accounts are the subject of other state court proceedings. *See, e.g.*, Mem. at 13. The breach of fiduciary duty claim as to the Citibank account thus would not require the court to "exercise jurisdiction over estate property under the [Probate Court's] control." *Pelczar v. Pelczar*, 833 F. App'x. 872, 875 (2d Cir. 2020) (summary order) (citing *Lefkowitz*, 528 F.3d at 107-08). Accordingly, as the account is not "res in the custody of a state court,"

*Lefkowitz*, 528 F.3d at 106, Alfredo's breach of fiduciary duty claim is not barred by the probate exception.

There are also other CitiBank accounts presumably at issue in Alfredo's breach of fiduciary duty claim, although he does not explicitly tie them to that claim. *See* FAC, ¶ 17 ("There existed/exist certain bank accounts held at Citibank, and/or certain brokerage accounts. . . Alfredo was a beneficiary and/or a joint beneficiary in one or more of the said accounts"); *see also* Hung Decl., ¶ 9 (Alfredo declares that Citibank advised him on December 22, 2022, that he was a beneficiary of an account ending in -295, and he was separately advised seven days later that he is a named beneficiary of an account ending in -234). To the extent that these accounts name Alfredo as a beneficiary—and only to that extent—they are likewise not subject to the probate exception.

**d. Failure to institute appropriate proceedings in the proper forum to properly probate the Queens Property**

Alfredo alleges that the Queens property is not an asset "within the purview of the Connecticut Probate Court"—and thus is not subject to the probate exception—because it is real property located outside the state of Connecticut. FAC, ¶ 20. Cristina rejects this argument and asserts that the Queens Property is within the purview of the Connecticut probate court. Mem. at 14.

"It is a doctrine firmly established that the law of a state in which land is situated controls and governs its transmission by will." *Olmsted v. Olmsted*, 216 U.S. 386, 393 (1910). New York law therefore governs the disposition of the Queens Property, and the Connecticut probate court would not administer that asset—only

a New York court would do so. Accordingly, on September 26, 2025, Cristina filed an ancillary probate proceeding in Queens County Surrogate's Court to administer the new ownership proportions for the Queens Property. Suppl. Simon Decl., ¶ 8; *id.*, Ex. 4; *see In re: Estate of Quock Get Hung Leun*, No. 2025-4150/A (N.Y. Sur. Ct. Queens Cnty. filed Sep. 26, 2025). Yet Alfredo filed his Amended Complaint in this Court months earlier, on July 7, 2025. FAC.

While Cristina's New York state court action may have triggered the probate exception were it filed before the FAC, "it has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (citation omitted). Accordingly, "the probate exception does not divest a federal court of subject-matter jurisdiction unless a probate court is already exercising *in rem* jurisdiction over the property at the time that the plaintiff files her complaint in federal court." *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 804 (6th Cir. 2015); *accord Kleeberg v. Eber*, No. 16-CV-9517 (LAK), 2017 WL 2895913, at *2 (S.D.N.Y. July 6, 2017); *cf. Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939) (holding that, when "two suits are in rem, or quasi in rem, . . . the jurisdiction of the one court must yield to that of the other," and "the principle applicable to both federal and state courts [is] that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other"); *Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677, 679 (2d Cir. 2015) (summary order) (presuming, without holding, that a probate-

exception challenge must be measured "against the state of facts that existed at the time of filing" where state probate action was active at time of filing but is no longer). Accordingly, the Court has jurisdiction over Plaintiff's claims regarding the Queens Property.

**2. Accounting Claim**

Alfredo also seeks "a full and accurate accounting of . . . the current and former accounts of Quock Hung" for the purpose of "finding the balance due to Alfredo." FAC, ¶¶ 41(iii). The Second Circuit and courts in this district regularly find the probate exception to bar accounting claims with respect to estates actively under a probate court's purview, as allowing such claims would inappropriately exercise control over such property. *See, e.g.*, *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *3 (2d Cir. Sep. 15, 2022) (summary order) (district court did not err in denying plaintiff leave to add claim for an accounting because probate exception would have barred that claim, which "relates to the estate and its administrator"); *Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677, 679 (2d Cir. 2015) (summary order) (probate exception bars accounting claim where surrogate court had supervisory control of trust administration at time of filing); *Beach v. Rome Tr. Co.*, 269 F.2d 367, 371 (2d Cir. 1959) ("any full accounting of the trust assets at this time would necessarily anticipate and interfere with [the process of administration in the Surrogate's Court]," so "plaintiff's demands for accounting of the estate" falls "within the rule that a previously attached quasi in rem jurisdiction of property in a state court requires a federal court to dismiss any claim

with regard to the property where the adjudication would interfere with the proceedings in the state court."); *Woitovich v. Schoenfeld*, No. 22-CV-01742 (JMF), 2022 WL 17979571, at *3 (S.D.N.Y. Dec. 28, 2022) ("the Court concludes that [the probate exception] does apply to—and thus bars—six of Woitovich's claims, which seek either distributions from the Trust or an accounting of the Trust's assets").

Alfredo is ambiguous as to whether all the "accounts" for which he seeks an accounting are—like those with beneficiary designations previously discussed—non-probate assets, or whether he also seeks an account of Quock's accounts currently under the supervision and administration of the Connecticut Probate Court. Accordingly, insofar as Alfredo seeks an accounting of the probate assets, the probate exception bars this Court's jurisdiction. Insofar as he seeks an accounting of the non-probate assets, the Court may proceed to consider those claims.

**B. Failure to State a Claim**

The Court now considers Cristina's Rule 12(b)(6) motion to dismiss Alfredo's claims that survive her Rule 12(b)(1) motion: his claim that Cristina breached her fiduciary duty to him with respect to the non-probate Citibank accounts and through waste to Quock's estate, and his demand for an accounting of Quock's Citibank accounts with beneficiary designations.

"Although the amended complaint in this case does not incorporate" the Will or the Trust, "it relies heavily upon [their] terms and effect; therefore, the[se] [documents are] integral to the complaint." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (cleaned up). Accordingly, the Court

"consider[s] [these documents'] terms in deciding whether [Plaintiff] can prove any set of facts that would entitle him to relief." *Id.*

**1. Breach of Fiduciary Duty Claim**

In Count One of the Complaint, Alfredo asserts, in relevant part, that Cristina "had a fiduciary duty to Alfredo based upon her appointment as Executor of Quock's will," FAC, ¶ 33, which she allegedly breached by "discharg[ing] her duties as Executor negligently and/or wrongfully, resulting in waste[] and the delayed distribution of non[-]probate assets to which Alfredo was and/or is entitled," FAC, ¶ 34. Alhough not in clear disagreement, the parties are ambiguous as to which state's law they believe applies to Alfredo's breach of fiduciary duty claim. *See* FAC, ¶ 18 (citing fiduciary obligations under Connecticut law); ECF No. 49 ("Opp'n") at 12 (citing pleading standard for breach of fiduciary duty under Connecticut law); Mem. at 9 (citing fiduciary obligations under New York law).

"It is well established that a federal court sitting in diversity must generally apply the choice of law rules of the state in which it sits." *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012). "In New York, the first step is to determine whether there is a substantive conflict between the laws of the relevant choices. In the absence of a substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Koury v. Xcellence, Inc.*, 649 F. Supp. 2d 127, 135 (S.D.N.Y. 2009) (cleaned up).

"In New York, claims for breach of fiduciary duty are analyzed under choice of law principles applicable to torts." *Id.* Where a claim sounds in tort, "New York courts apply an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citation omitted). In this respect, "Connecticut and New York tort law is fundamentally identical." *In re Bayou Hedge Fund Inv. Litig.*, 472 F. Supp. 2d 534, 540 (S.D.N.Y. 2007). "While New York calls its choice of law principle 'interest analysis' while Connecticut uses the phrase 'most significant relationship,' the test applied in the two states is the same." *Id.* at 540-541. "[I]n tort cases, the state will apply the law of the state that has the greatest or most significant interest in the transaction that underlies the lawsuit." *Id.* at 541. Given that Alfredo accuses Cristina of breaching her fiduciary duty as executor of Quock's estate, the probate of which a Connecticut state court has exercised jurisdiction, the Court applies Connecticut law to Alfredo's breach of fiduciary duty claim. Under Connecticut law, a plaintiff must plead four elements to successfully allege a breach of fiduciary duty by an executor of a Will:[1]

> 1) that a fiduciary relationship existed which gave rise to a duty of loyalty, an obligation to act in the best interests of the plaintiff, and an obligation to act in good faith in any matter relating to the plaintiff; 2) that the defendant advanced his or her own interests to the detriment of the plaintiff"; 3) that

[1] This standard derives from *Rendahl v. Peluso*, 173 Conn. App. 66 (2017), which the Supreme Court of Connecticut recently overruled with respect to trustees but left alone "with respect to fiduciaries other than trustees." *Barash v. Lembo*, 348 Conn. 264, 300 n.23, 301 (2023). Accordingly, the Court treats *Rendahl* as good law with respect to executors. In any case, any analysis requires the existence of a fiduciary duty, which Cristina does not owe Alfredo as executor in the instances alleged.

> the plaintiff sustained damages; and 4) that the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty.

*Abrahms v. Baitler*, No. 21-CV-01568 (VAB), 2022 WL 3701601, at *3 (D. Conn. Aug. 26, 2022) (cleaned up).

**a. Citibank Accounts with Beneficiary Designations**

The motion to dismiss argues that Alfredo's claim for $78,000 in personal damages against Cristina for breach of fiduciary duty with respect to the non-probate Citibank accounts fails under Rule 12(b)(6) for the same reason it survives under Rule 12(b)(1). Mem. at 13. That is, insofar as the account passes outside of probate (and thus beyond Cristina's capacity as executor of the Will), Alfredo has not alleged that Cristina owes him any fiduciary duty with respect to it. Accordingly, Cristina argues that "Alfredo should take up any purported dispute over his entitlement to transfer-on-death funds with Citibank, not his sister." *Id.*

Under Connecticut law, "[i]t is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them." *Biller Assocs. v. Peterken*, 269 Conn. 716, 723 (2004). Alfredo avers that, "[s]ince these accounts are listed on the Estate Inventory, there are questions as to Cristina's actions with respect to these accounts," and "[b]y doing this, Cristina made these accounts part of her probate duties." Hung Decl., ¶ 9. Cristina cannot, however, transform a non-probate asset into a probate asset by virtue of listing it on the estate inventory—doing so would not change the beneficiary designations of the Citibank accounts. While Alfredo raises, in opposition to the Motion, Cristina's role as trustee of her father's revocable trust, *compare* Opp'n at 4, 14, *with* Mem. at 4,

perhaps implying a fiduciary duty she may owe in that capacity, the Amended Complaint does not make reference to that trust or provide information to allow the Court to assess the parties' fiduciary relationship, or lack thereof, with respect to it.

Accordingly, the Court determines that Cristina does not owe Alfredo a fiduciary duty with respect to the non-probate Citibank accounts, so Alfredo cannot have pleaded a breach with respect to those assets.

**b. Waste to the Estate**

Alfredo alleges that Cristina breached her fiduciary duty to him by causing waste to the estate through various tax failures, failures to maintain complete and accurate records of Quock's assets, commingling estate-related assets with her own assets, and incurring IRS penalties to the detriment of Alfredo's inheritance. FAC, ¶ 31, 34. Although Alfredo has no claim to Quock's estate but for the Queens Property, to which he does not allege waste. *See generally* Will; Trust. Given that Cristina does not owe him any fiduciary duty as executor regarding the non-probate accounts, Alfredo has not established that Cristina owes him any duty with respect to the estate writ large. Accordingly, the Court need not reach the merits of Alfredo's allegations that Cristina caused waste to the estate.

**c. Queens Property**

Defendant's argument with respect to the Queens Property, however, relies exclusively on evidence from outside the pleadings to suggest that Plaintiff had good faith reasons for her delay in filing an ancillary proceeding. *See* ECF No. 50 at 9-10. Yet this is generally not an appropriate basis for a motion to dismiss for failure to

state a claim, which must be based on the allegations within the four corners of the pleading unless conditions warrant "the motion to be treated as one for summary judgment and disposed of as provided in Rule 56." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("[C]onsideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" except where a document is "integral" to the complaint, it is "clear on the record that no dispute exists regarding the authenticity . . . of the document[,]" and it is "clear that there exist no material disputed issues of fact regarding the relevance of the document.").

### 2. Equitable Accounting of Citibank Accounts with Beneficiary Designations

Under a New York choice-of-law analysis, "the law of the jurisdiction with the greater interest in having its law applied in the litigation governs." *Stikas v. J.P. Morgan Chase Bank, Nat. Ass'n*, No. 14-CV-01277 (PAC), 2015 WL 1262203, at *6 (S.D.N.Y. Mar. 19, 2015) ("Since an accounting is equitable, the law of the jurisdiction with the greater interest in having its law applied in the litigation governs" (cleaned up)). For an equitable accounting, this principle dictates that the jurisdiction where the assets are located has the greater interest. *Id.* In this case, because Quock's relevant assets are in Connecticut, Connecticut law applies to Alfredo's second claim.

Alfredo asserts that a party seeking an accounting must establish "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing on him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal."

Opp'n at 14 (citing *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d, 710, 721 (S.D.N.Y. 2019)). This is the standard for an equitable accounting under New York law, however, not Connecticut law. *Winklevoss*, 351 F. Supp. 3d at 721.

Under Connecticut law, "one of several conditions [must] exist" to lay claim to an equitable accounting: "[t]here must be a fiduciary relationship, or the existence of a mutual and/or complicated accounts, or a need of discovery, or some other special ground of equitable jurisdiction such as fraud." *Stikas*, 2015 WL 1262203, at *6 (citing *Censor v. ASC Techs. of Connecticut, LLC*, 900 F. Supp. 2d 181, 216 (D. Conn. 2012)). Alfredo's evidence of the -7673 account's shifting beneficiary designations, FAC, ¶¶ 25-27, 30(b), and his difficulty accessing assets from the non-probate accounts as a beneficiary, Hung Decl., ¶ 10, sufficiently plead a claim for equitable accounting under Connecticut law.

**CONCLUSION**

Accordingly, the Motion to Dismiss is **GRANTED** with respect to Alfredo's breach of fiduciary duty claim, except as it pertains to the claim for failure to institute proceedings regarding the Queens property, and with respect to Alfredo's accounting claim, except as it pertains to the non-probate assets. It is **DENIED** in all other respects. The Clerk of Court is directed to terminate ECF No. 33.

SO ORDERED.

Dated: July 20, 2026
New York, New York

Jeannette Vargas

JEANNETTE A. VARGAS
United States District Judge